**STATE of Minnesota, Respondent,**

v.

**Mitchell PEIRCE, Appellant.**

No. C7–83–1774.

Supreme Court of Minnesota.

March 29, 1985.

Michael F. Cromett, St. Paul, for appellant.

Thomas L. Johnson, Co. Atty., Vernon E. Bergstrom, Richard Osborne, J. Michael Richardson, Paul R. Jennings, and Beverly J. Wolfe, Asst. Co. Attys., Minneapolis, Hubert H. Humphrey, III, Atty. Gen., St. Paul, for respondent.

SIMONETT, Justice.

Defendant-appellant Mitchell Peirce appeals his conviction for first-degree murder (causing unintentional death during criminal sexual conduct), second-degree murder (causing unintentional death during a burglary), and his life imprisonment sentence on the first-degree murder conviction. We affirm.[1]

During the night of November 19, 1982, four young men entered Luella Larson's home. Mrs. Larson was tied up, terrorized, sexually assaulted, and beaten to death. The young men took two rings, some food, and $10. Mrs. Larson was 71 years old, blind, widowed only a week, and home

---

**1.** The first-degree murder conviction was under Minn.Stat. § 609.185(2) (1984), and the second-degree murder conviction was under Minn.Stat. § 609.19(2) (1984). For both of these crimes the jury was also instructed on the aiding and advising statute, Minn.Stat. § 609.05, subds. 1, 2 (1984).

The jury found defendant Peirce not guilty of first-degree murder under Minn.Stat. § 609.-185(3) (1984) (intentional killing while committing burglary).

The trial court sentenced Peirce to life imprisonment on the first-degree murder conviction, but, pursuant to section 609.035, did not impose a sentence for the second-degree murder conviction.

alone that night, defenseless in her bed. Appellant Peirce admits he was one of the four men that entered the house, but disputes the extent of his involvement in what happened and claims various prejudicial errors occurred at his omnibus hearing and trial.

I.

Defendant Peirce claims his warrantless arrest was without probable cause and that after his arrest, notwithstanding his request that the police stop questioning him, the police continued to interrogate and obtained his signed confession, in violation of his *Miranda* rights. Both claims were denied at the omnibus hearing. We affirm these rulings.

■ 1. Four days after the burglary, at about 10 p.m. at a 7-Eleven store, the police arrested defendant Peirce without a warrant on the basis of an informant's tip. The informant had given the police names of the four persons that had been involved in the burglary, reported that two of the burglars had beaten the "old woman" to death, that $10 or $15 had been taken, and that one of the burglars had burglarized the house before and knew blind people lived there. The police testified they had received information from this informant twice before, and the information had been "one hundred percent reliable" and had resulted in convictions. Defendant Peirce argues the informant had passed on nothing that was not already reported in the news coverage of the crimes. The trial court, however, found that the informant's information was reliable and had led to past arrests and convictions; that the informant had obtained his information from the burglars themselves; and that the informant knew where Peirce lived. These facts satisfy the probable cause requirements of *Illinois v. Gates*, 462 S.Ct. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and, indeed, would satisfy the more stringent requirements of the old *Aguilar-Spinelli* test which *Gates* replaced.

■ 2. When he was arrested at the 7-Eleven store, defendant Peirce says he was given his *Miranda* rights in the squad car and he told the officers he wanted to remain silent. About 3 hours later, at the police station, Peirce says he was again read his *Miranda* rights, says he asked for an attorney and again stated he wanted to remain silent, but the police officer persisted in questioning him, and he finally, at 12:55 a.m., gave a written statement. At the omnibus hearing, the two police officers present during the questioning at the police station testified. They said defendant did not say anything to them about remaining silent and did not request an attorney. The officer who took the statement said that he was not "advised at any time that he [Peirce] did not want to talk or had made a statement that he did not want to talk." Peirce read over his typed statement (which also contained *Miranda* warnings and a waiver), made corrections, and signed it. The omnibus court found that defendant was advised of his *Miranda* rights at the time of his arrest and again at the police station; that defendant did not ask to speak with a lawyer or refuse to talk with the officers; and that the confession was voluntary. We have made our own independent evaluation of the record and conclude that the trial court's findings are not clearly erroneous. *See State v. Kulseth*, 333 N.W.2d 635, 637 (Minn.1983); *State v. Hardimon*, 310 N.W.2d 564, 567 (Minn.1981). The trial court was warranted in resolving the issues of credibility against Peirce. Defendant Peirce points out that the state did not call as witnesses the police officers who were with defendant in the squad car at the 7-Eleven store when defendant was first read his *Miranda* rights, and so Peirce's testimony that he had initially expressed a wish to remain silent was unrebutted. We think, however, that Peirce's testimony was sufficiently rebutted by the police officers who did testify.

■ 3. Even if Peirce's testimony that he had expressed a wish in the squad car to remain silent were true, the signed statement would still be admissible. The admissibility of the statement given after

an exercise of the right to remain silent depends on whether the police "scrupulously honored" the defendant's right to cut off questioning. *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). Here defendant was arrested about 10 p.m. and gave his statement at 12:55 a.m. During the ride to the police station in the squad car, Peirce says he answered no questions and, indeed, fell asleep. The signed statement was taken at the police station, a different location from where the first *Miranda* warning was given, and by different officers, after fresh *Miranda* warnings and a waiver and after a lapse of well over 2 hours. Nor does the subsequent questioning at the police station about the same crime necessarily establish undue pressure, especially with the substantial time interval between interviews. *Stumes v. Solem*, 752 F.2d 317 (8th Cir. 1985). Under these circumstances and on this record, it cannot be said that the police failed to scrupulously honor defendant's right to have his questioning stopped. Finally, there is no merit to defendant's claim that he was incapable, because of drinking and smoking marijuana, of making a knowing and intelligent waiver of his rights. Peirce remembered being read his *Miranda* rights twice. He answered questions with apparent ease, and he was alert enough to make corrections on his typed statement.

## II.

Defendant-appellant Peirce further claims he was denied his constitutional right to confront a key state's witness. He denies the state's contentions that he waived his right of confrontation by his own misconduct, and he raises the issue of what is the proper burden of proof on the state to prove waiver. We hold that defendant had a right of confrontation but waived it.

At trial, the state, as part of its case, put in evidence defendant Peirce's police statement. In his statement, Peirce (who later testified in his own defense) admitted the burglary but denied that he or anyone else had sexually assaulted the victim, and he denied hitting the victim. Peirce did admit tying the victim's hands behind her back, threatening anal sexual assault, and having a penlight (the evidence of sexual penetration was consistent with use of a penlight), but he stated he did not realize the victim was a woman. The state then called Mahlon Goodridge, one of defendant's fellow burglars, as a witness. Out of the presence of the jury, Goodridge refused to testify, invoking the fifth amendment, even after being granted use immunity. At that point, over defendant's objection, the trial court allowed the state to read into evidence portions of Goodridge's testimony given at his own prior trial. In this prior testimony, Goodridge stated that Peirce tied Mrs. Larson's hands behind her back and said, "Find out where that money is"; that Peirce later threatened Mrs. Larson with anal sexual assault and said he would kill her if she did not tell where she kept her money; that Peirce punched Mrs. Larson a number of times; that Peirce had a penlight; and that Peirce was present when Mark Hoagland, another member of the group, sexually assaulted Mrs. Larson, and Peirce punched the elderly woman during the assault. Goodridge also, in his trial testimony, said he himself hit the victim three times and removed her wedding rings.

Defendant-appellant Peirce contends the admission of Goodridge's prior trial testimony violated his constitutional right to confront Goodridge. He points out he was denied an opportunity to face his accuser or to cross-examine him. Peirce concedes that Goodridge's testimony was admissible hearsay as a statement against penal interest, but he contends that, even so, the hearsay testimony does not meet the necessary "trustworthiness" for admission under the confrontation clause. To be "trustworthy," the United States Supreme Court requires, first, that the hearsay declarant be unavailable and, second, that the hearsay statement bear adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–2539, 65

L.Ed.2d 597 (1980); *State v. Hansen,* 312 N.W.2d 96, 102 (Minn.1981). Here, as defendant concedes, the state had established Goodridge's unavailability to testify.[2] It is, however, less clear if Goodridge's hearsay testimony bears sufficient indicia of reliability to satisfy the confrontation clause. On the one hand, Goodridge's prior testimony was under oath, given at a trial, essentially consistent with his earlier police statement, and was substantially self-incriminating. On the other hand, Goodridge's testimony at his own trial was not subject to cross-examination by anyone representing Peirce's interests and, as defendant points out, it is only Goodridge's hearsay testimony that links him directly to the sexual assault and the beatings. There are a variety of case holdings on what constitutes the requisite indicia of trustworthiness. *See, e.g., Dutton v. Evans,* 400 U.S. 74, 88–89, 91 S.Ct. 210, 219–220, 27 L.Ed.2d 213 (1970); *United States v. Katsougrakis,* 715 F.2d 769, 776 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *Hansen,* 312 N.W.2d at 102–03. We need not, however, decide this issue because we conclude defendant Peirce, by his own acts, procured the witness' unavailability and thereby waived his right to confrontation.

 Where a defendant has procured the absence of a witness by threats, the defendant impliedly waives his right to confront the witness. *Hansen,* 312 N.W.2d at 102–03. At his own trial, Goodridge testified under oath that shortly after the burglary Peirce had threatened him, saying, "If you say anything about this you'll die,

you know, you might as well consider yourself dead, you know if you snitch or anything like that." At Peirce's subsequent trial, during the proceedings outside the hearing of the jury, Goodridge again confirmed he had been so threatened. Goodridge went on to say, however, that his refusal to testify at the Peirce trial was not based on Peirce's threats but on fear for his safety from other inmates at Stillwater prison if he became known as someone who snitched. The trial court determined that Goodridge's refusal to testify was based on defendant Peirce's threats and found waiver.

 Defendant-appellant claims the state failed to sustain its burden of proof to establish waiver, and therefore the trial court's ruling was wrong. This court has not ruled on the proper burden of proof, nor has the United States Supreme Court. The federal circuit courts of appeal are not in agreement, the fifth circuit requiring proof of waiver by "clear and convincing evidence" and the second, sixth and tenth circuits requiring a "preponderance of the evidence" standard.[3] We see no need here to choose between the two standards. From our review of the record, we conclude that the trial court's finding of waiver is sustainable under either standard and the finding is supported by clear and convincing evidence as well as by a fair preponderance of the evidence. Here we have the sworn statement by the witness Goodridge that the defendant directly threatened his life if he would "snitch." Goodridge's subsequent denial of the significance of this

---

**2.** Declarant's refusal to testify on the basis of his fifth amendment privilege is sufficient to constitute "unavailability." *State v. Hansen,* 312 N.W.2d 96, 102 (Minn.1981).

Witness Goodridge had been convicted of first-degree murder at his own prior trial, and, at the time of defendant Peirce's trial, Goodridge's appeal was pending. Goodridge asserted the fifth amendment and remained steadfast in his refusal to testify at Peirce's trial, even after immunity was granted, and he was found in contempt by the trial court. Goodridge's conviction for first-degree murder was affirmed by this court in *State v. Goodridge,* 352 N.W.2d 384 (Minn.1984).

**3.** *United States v. Thevis,* 665 F.2d 616, 631 (5th Cir.1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1983) (requiring clear and convincing standard). Adopting the preponderance test are *United States v. Mastrangelo,* 693 F.2d 269, 273 (2d Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1983); *Steele v. Taylor,* 684 F.2d 1193, 1202 (6th Cir.1982), *cert. denied,* 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983); *United States v. Balano,* 618 F.2d 624, 629 (10th Cir.), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980).

threat is not particularly convincing; we observe that the denial was given in response to leading questions by Peirce's own attorney and the prosecutor and with defendant Peirce present in the room. We hold that the trial court did not err in finding defendant Peirce had by his own misconduct waived his right to confrontation, and that, therefore, the prior hearsay testimony of Goodridge was admissible.

### III.

Defendant-appellant Peirce raises several other issues: Did the state's refusal to grant use immunity to proposed defense witnesses deny Peirce due process? Did the trial court's instructions on "aiding and advising" serve to dilute the requirement of proof beyond a reasonable doubt? Was there sufficient evidence to sustain the first-degree murder conviction under Minn. Stat. § 609.185(2)?

1. Defendant-appellant claims the trial court erred in refusing his request to grant use immunity to two codefendants he wished to call as witnesses in his own defense. Defendant argues that if the immunity statute, Minn.Stat. § 609.09 (1984), is construed to permit only the state prosecutor to ask for witness immunity, it is unconstitutional, and that for the prosecution to refuse to request and the court to refuse to grant defense witness immunity violates defendant's constitutional rights. We disagree and affirm the trial court.

Defendant wished to call Troy Palthen and Mark Hoagland, the remaining two members of the burglary, as defense witnesses. Neither of these two had yet had their own trials, and defendant Peirce expected them, if called as witnesses, to refuse to testify on fifth amendment grounds. Peirce wanted the trial court, therefore, to give Palthen and Hoagland use immunity. Not to do so, argues Peirce, denies his right to compulsory process and a defendant's right to present a defense. Moreover, says Peirce, for the trial court to have granted the state use immunity for codefendant Goodridge but to deny him the same request violates his due process rights.

Section 609.09 plainly says it is the prosecuting attorney alone who may request use immunity for a witness,[4] and this court has so held. *State ex rel. Windschitl v. Landkammer,* 299 Minn. 184, 190, 217 N.W.2d 494, 498 (1974). The trial court then decides, based on the statutory criteria, whether immunity will be granted. If the defense wishes to immunize a witness, it should ask the prosecutor to make the written request to the court. *Id.,* 299 Minn. at 191, 217 N.W.2d at 499. In *Windschitl,* although we were dealing with the broader transactional immunity, we affirmed the prosecutor's refusal to invoke the immunity statute for defense witnesses against a due process and equal protection challenge.

Defendant-appellant, however, relies heavily on *Government of Virgin Islands v. Smith,* 615 F.2d 964 (3rd Cir. 1980), which holds, in a case of prosecutorial misconduct, that the court may order an acquittal unless the government consents to grant statutory use immunity to defense witnesses. The Third Circuit went on to say that, absent statutory authority, a court may in the exercise of its inherent power fashion a form of judicial use immu-

---

**4.** Minn.Stat. § 609.09, subd. 1 (1984), provides in part:

Subdivision 1. In any criminal proceeding, * * * if it appears a person may be entitled to refuse to answer a question * * * on the ground that he may be incriminated thereby, and if the prosecuting attorney, in writing, requests the * * * judge of the court in which the proceeding is pending to order that person to answer the question * * *, the judge, after notice to the witness and hearing, shall so order if he finds that to do so would not be contrary to the public

interest and would not be likely to expose the witness to prosecution in another state or in the federal courts.

After complying, and if, but for this section, he would have been privileged to withhold the answer given * * *, no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case * * *.

nity when a defendant is otherwise prevented from presenting crucial exculpatory evidence and there is no strong countervailing public interest. *Id.* at 969–70. Generally, however, at least absent egregious prosecutorial misbehavior, the circuits appear to agree that the present practice of denying defense witness immunity does not violate a defendant's constitutional rights. *See, e.g., United States v. Turkish,* 623 F.2d 769, 772–75 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Thevis,* 665 F.2d 616, 639–40 (5th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982); *United States v. Klauber,* 611 F.2d 512, 517 n. 10 (4th Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980); *Earl v. United States,* 361 F.2d 531 (D.C.Cir.1966), *cert. denied,* 388 U.S. 921–22, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967). We agree with this general proposition. We agree with the *Turkish* and *Thevis* courts that to allow defense witness immunity would be an impermissible intrusion into prosecutorial discretion which must remain with the executive branch, and that such immunity would be vulnerable to manipulation and abuse by codefendants and others with a common interest in evading guilt.

■ In this case there is no prosecutorial misconduct; no claim has been made, for example, that the prosecution is making a defense witness unavailable. Nor, for that matter, is it apparent that the testimony of codefendants Palthen and Hoagland would be as exculpatory as defendant Peirce suggests. But it is enough for us to hold here, and we do, that the trial court was correct in ruling that it lacked the authority and power to grant immunity to Peirce's codefendants on the grounds that the codefendants had important exculpatory evidence not otherwise available to defendant Peirce.

2. Defendant-appellant next claims error in the trial court's charge to the jury. The trial court instructed the jury on "aiding and advising," following Minn.Stat. § 609.05, subd. 2 (1982), as this court has

interpreted that subdivision in *State v. Filippi,* 335 N.W.2d 739, 742 (Minn.1983), using CRIMJIG 4.01 (1977) verbatim:

> Defendant is guilty of a crime committed by another person when defendant has intentionally aided the other person in committing it, or has intentionally advised, or hired, or requested the other person to commit it.

> If defendant intentionally aided another person in committing a crime or intentionally advised or hired or requested the other person to commit it, defendant is also guilty of any other crime which that person commits while trying to commit the intended crime, *if that other crime was reasonably foreseeable as a probable consequence of trying to commit the intended crime.*

(Emphasis added.)

■ Defendant Peirce argues that the language "reasonably foreseeable as a probable consequence" of the intended crime allowed the jury to return a verdict on something less than beyond a reasonable doubt. Defendant says the jury was told it could return a guilty verdict if it found that the criminal sexual conduct was only "reasonably" foreseeable. This is not what the jury was told, and there is no merit to defendant's selective and oversubtle reading of the instruction. Taken as a whole, the jury was plainly advised that defendant could not be convicted of aiding and assisting another person in committing another crime unless it had been proven beyond a reasonable doubt that this other crime was reasonably foreseeable as a probable consequence of the intended crime. Defendant's reliance on *State v. Tibbetts,* 281 N.W.2d 499 (Minn.1979), is misplaced. There the jury was instructed that it had to find beyond a reasonable doubt not only that the defendant in a sexual misconduct case intentionally touched the victim, but "that the touching *could* reasonably be construed as being for the purpose of satisfying the defendant's sexual impulses * * *." We pointed out the use of the word "could" diluted the burden of proof. *Id.* at 500. Here the jury

was instructed it could find the defendant guilty of aiding and abetting only if the crime *was* reasonably foreseeable as a probable consequence of the intended crime.

3. Finally, defendant-appellant contends there is insufficient evidence to sustain his first-degree murder conviction. There is no merit to this claim. The jury could find that defendant had intentionally aided another in the commission of a sexual assault causing death. Peirce actively participated in the planning and execution of the burglary, and, if he did not sexually assault the victim, he aided those who did. Peirce admits he tied Mrs. Larson's hands behind her back. He admits threatening her with sexual assault. He admits he was present in the same room or adjacent rooms of the small house while Mrs. Larson was beaten. In addition, Goodridge testified that he saw Mark Hoagland sexually assault the victim in Peirce's presence and that Peirce punched the victim during this assault. This is aiding and assisting. *See, e.g., State v. Strimling,* 265 N.W.2d 423, 429 (Minn.1978); *State v. Parker,* 282 Minn. 343, 355–57, 164 N.W.2d 633, 641–42 (1969). Even if this were not enough—which it is—the evidence also sustains a conviction on the basis that the sexual assault was reasonably foreseeable by defendant as a consequence of burglarizing a home occupied by a woman. *State v. Nunn,* 297 N.W.2d 752, 754 (Minn.1980) (burglary of a dwelling carries with it the possibility of violence). Nor is there any merit in defendant's claim that the testimony of accomplice Goodridge was not corroborated. Peirce's presence and admitted participation in the events that occurred, together with the medical evidence establishing that a sexual assault had taken place, plus the finding of a hair consistent with a hair from Peirce's head on the victim's pajama top, all go to corroborate the accomplice's testimony. *See State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980).

Affirmed.