**STATE of Minnesota, Respondent,**

v.

**Nicholas Vincent SUPER, Appellant.**

**No. A09–242.**

Court of Appeals of Minnesota.

April 20, 2010.

stitutionality based merely on the possibility       of it occurring.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

Melissa Sheridan, Special Assistant State Public Defender, Eagan, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

HUDSON, Judge.

Appellant challenges his conviction of second-degree intentional murder following a court trial, arguing that: (1) the district court violated his constitutional right to present a complete defense by not granting use immunity to one of appellant's witnesses or to continue appellant's trial until the conclusion of the appeal of that witness's conviction and (2) the circumstantial evidence is insufficient to support his conviction. The district court did not err by failing to order use immunity or to continue appellant's trial because the state's litigation tactics do not constitute prosecutorial misconduct and the record does not suggest that the exculpatory aspects of the witness's expected testimony would have materially differed from her statement to police that was produced at trial. The circumstantial evidence is suffi-
cient to support appellant's conviction, and we affirm.

## FACTS

A Hennepin County grand jury indicted appellant Nicholas Vincent Super on one count of first-degree, premeditated murder in violation of Minn.Stat. § 609.185(a)(1) (2006) and one count of second-degree intentional murder in violation of Minn.Stat. § 609.19, subd. 1 (2006). The charges related to an incident in January 2007 when appellant, who was involved in a "love triangle" with Dana Back and Daniel Holliday, had an altercation with Holliday, in Back's presence, that ended with appellant shooting and killing Holliday.

Two separate district court judges were involved in this case. In October 2007, the first district court judge granted appellant's initial motion for a continuance, based on the argument that appellant wished to call Back as a necessary defense witness. But Back, who was convicted of culpable-negligence manslaughter in connection with Holliday's death, indicated that she wished to invoke her right to remain silent and decline to testify in appellant's case. As a result, the defense asked the state to grant use immunity for Back's testimony at appellant's trial; the state refused to do so. Several months later, the state demanded a speedy trial; the defense reiterated that Back, who by then had appealed her conviction, was a necessary witness for the defense. The second district court judge declined to order a further continuance, concluding that continuing the trial indefinitely would not resolve the immunity issue.

Appellant's trial was held in September and October 2008 before the first district court judge. The district court conducted a bench trial after appellant waived his right to a jury trial. The district court issued its verdict, finding appellant guilty

of second-degree intentional murder and not guilty of first-degree premeditated murder. The district court found that the shot that killed Holliday came from a 40-caliber, semi-automatic handgun, the shooting caused Holliday's death in Hennepin County, and that appellant intended to kill Holliday.

The district court issued findings in support of its verdict. Specifically, the district court found that Holliday and Back co-owned a house on Girard Avenue North in Minneapolis, where the shooting occurred. For about a year, Back had an intermittent relationship with appellant, but also continued her relationship with Holliday, of which appellant was aware. The district court found that in the early morning of January 1, 2007, Back called appellant and asked him to drop her off at the house on Girard Avenue North. Appellant dropped her off but waited outside in the alley. Back and Holliday argued inside the house, and Holliday tried to force Back to leave by pushing her out on the deck. Holliday then saw appellant, and the two men began to argue. Back reentered the house, and Holliday again pushed her out onto the deck, shoving her into a railing. Appellant, who was carrying a 40-caliber semiautomatic pistol, left the alley and came up the stairs leading to the deck, within a few feet of Holliday.

The district court found that, as Holliday reached out his arm toward appellant, appellant pulled the trigger, shooting Holliday in the side of the chest. When appellant pulled the trigger, he knew a live round was in the chamber. Appellant fired the bullet from close range, one foot or less from the entry wound, penetrating Holliday's aorta and both lungs. After the shooting, police recovered a shell casing and a live round within a foot of each other, near Holliday's body.

Appellant fled and called the house a few minutes after the shooting, telling the person who answered, "That's what you get when you f—k with me, bitch." Appellant discarded the gun at some point during his flight. Appellant later turned himself in to police. Police later recovered the gun with the help of a map appellant gave to a person confined with appellant in the Hennepin County jail.

In addressing the issue of intent, the district court found that a firearms examiner for the Minneapolis Police Department was "highly credible" on issues relating to the weapon from which the shot was fired; that the gun has a "strong" trigger pull, which requires five to six pounds of pressure; and that in order to eject a live round from the firearm, a person must pull a slide all the way back. The district court found that "[b]ecause of the strong trigger pull and safety features of a gun of this type, it cannot easily be discharged accidentally."

The district court did not address the immunity issue on the record, but allowed Back to invoke her privilege against self-incrimination; Back declined to testify. The district court allowed the defense to introduce Back's taped statement to police over the state's objection. In that statement, Back said that the two men were standing "really close" when appellant shot Holliday and that her back was turned when the shooting occurred. Appellant was sentenced to 294 months on the second-degree murder conviction, and this appeal follows.

## ISSUES

I. Was appellant's constitutional right to present a complete defense denied when the state failed to request use immunity for Back's testimony and the district court declined to order use immunity or continue

the trial until Back's appeal was concluded?

II. Is the evidence sufficient to support appellant's conviction of second-degree intentional murder?

## ANALYSIS

### I

■ A person may be granted immunity in a criminal proceeding if the prosecutor requests that the district court order that person to testify and the district court finds that the testimony would not be contrary to public interest and would not likely expose the person to prosecution. Minn.Stat. § 609.09, subd. 1 (2008). If the witness's testimony would have been privileged, it may not "be used against the witness in any criminal case." *Id.* Under Minn.Stat. § 609.09, "it is the prosecuting attorney alone who may request use immunity for a witness." *State v. Peirce,* 364 N.W.2d 801, 808 (Minn.1985).

■ Appellant argues that the district court violated his rights to compulsory process and to present a defense by failing to order use immunity for Back's testimony at his trial or to continue the trial until Back's appeal had been concluded so that Back would no longer have a privilege against self-incrimination. Whether a defendant has been denied due process by the denial of a defense request for use immunity presents a legal issue, which this court reviews de novo. *See id.*

The Minnesota Supreme Court in *Peirce* agreed generally with a federal circuit court consensus that the practice of denying use immunity to a defense witness does not violate a defendant's constitutional rights, absent "egregious prosecutorial misbehavior." *Id.* at 809 (citations omitted). The court followed a separation-of-powers analysis and held that requiring defense-witness immunity would amount to "an impermissible intrusion into prosecutorial discretion which must remain with the executive branch." *Id.* The supreme court also noted that such immunity would be vulnerable to abuse and manipulation by codefendants and witnesses with an interest in evading guilt. *Id.* Unless there is prosecutorial misconduct, the district court generally has no authority to order immunity for co-defendants even when the defense asserts that the co-defendants have important exculpatory evidence not otherwise available to the defendant. See *id.* The supreme court further commented that it was not "apparent that the testimony of [the] codefendants … would be as exculpatory as [the defendant] suggests." *Id.*

Appellant argues that the exception for prosecutorial misconduct under *Peirce* applies here because the state: (1) intentionally withheld use immunity for Back to prevent the introduction of exculpatory evidence; (2) failed to present a "compelling interest" for not requesting use immunity; and (3) argued vigorously against the introduction of Back's statement to police. Appellant also argues that the district court's failure to grant immunity violated his due-process rights because Back was the only other person present during the shooting, and her sworn testimony was critical to the defense.

■ We disagree. In our view, the state's refusal to request immunity for Back's testimony and its attempt to block admission of Back's statement to police are matters of routine trial strategy. "Which witnesses to call and what evidence to present to the [factfinder] are matters of trial strategy, which are within the discretion of trial counsel." *State v. Bliss,* 457 N.W.2d 385, 392 (Minn.1990). Adopting appellant's position would intrude into prosecutorial discretion, an executive-branch function. *Peirce,* 364 N.W.2d at

809. Similarly, the prosecution's vigorous representation of the state's position by arguing that Back's statement to police should be excluded from evidence was a valid trial strategy. *See, e.g., State v. Shoen*, 578 N.W.2d 708, 717 (Minn.1998) (noting that prosecutor's argument consistent with state's theory of case reflected trial strategy, not prosecutorial misconduct). We conclude that the state's trial strategy does not constitute prosecutorial misconduct so as to require the district court to order use immunity for defense-witness testimony.

We also note that in support of the district court's refusal to grant use immunity to Back, the state argues that granting use immunity to Back for her testimony at appellant's trial would have precluded the state from using her compelled statement for any purpose, should her appeal have resulted in a new trial. *See Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972) (holding that, after a compelled statement, the state has the burden to show that its proposed evidence "is derived from a legitimate source wholly independent of [that statement].") But the Minnesota Supreme Court reversed Back's conviction of culpable-negligence manslaughter on the ground that the evidence was insufficient to support her conviction because Back owed no duty to control appellant or to protect Holliday. *State v. Back*, 775 N.W.2d 866, 872 (Minn.2009). Thus, double jeopardy precludes Back's retrial. *See State v. Harris*, 533 N.W.2d 35, 36 n. 1 (Minn. 1995) (noting that "[i]f a defendant obtains a reversal because of the insufficiency of the evidence as a matter of law, then the double jeopardy clause clearly precludes further prosecution"). The reversal of Back's conviction makes moot the state's argument on future use of her compelled testimony.

Appellant's argument that he was deprived of critical exculpatory evidence at trial likewise fails because the district court admitted, albeit over the state's objection, Back's statement to police. The district court admitted the statement under the residual hearsay exception, concluding that: (1) it bore sufficient circumstantial guarantees of trustworthiness; (2) it was offered as evidence of material facts relating to the issues of lack of presence of premeditation and lack of presence of provocation; (3) it was more probative than other evidence that the defendant could procure through reasonable efforts; and (4) the general purposes of the rules and the interests of justice would best be served by admitting the statement. *See* Minn. R. Evid. 807. Although Back's statement was not made under oath or subject to cross-examination, Back was read her *Miranda* rights and told that she was a suspect. In her statement, Back told police that she was present during the shooting, with her back facing Holliday, and that she heard a pop and turned to see Holliday lying on the ground. Appellant has not explained how Back's compelled testimony at trial would have differed, in terms of exculpatory content, from her statement to police.

Appellant also argues that the district court erred by not granting a further continuance until after Back's appeal was concluded, when she would no longer have a Fifth Amendment privilege against self-incrimination. "The right to call witnesses in one's behalf is an essential element of a fair trial and due process." *State v. King*, 414 N.W.2d 214, 219 (Minn. App.1987), *review denied* (Minn. Jan. 15, 1988). But the decision to grant or deny a continuance lies within the sound discretion of the district court and will only be reversed if that discretion is abused.

*State v. Turnipseed,* 297 N.W.2d 308, 311 (Minn.1980). We examine the circumstances before the district court "to determine whether the [district] court's decision prejudiced the defendant by materially affecting the outcome of the trial." *Id.*

The district court granted the first defense motion for a continuance in October 2007. Back appealed her conviction in January 2008. In April 2008, the district court denied appellant's motion for a further continuance. Appellant's trial was ultimately held in September and October 2008.

The district court did not abuse its discretion by failing to grant an additional continuance to secure Back's testimony. The district court correctly noted that Back's privilege against self-incrimination could survive an appeal and that continuing appellant's trial indefinitely would not resolve the immunity issue. *See Johnson v. Fabian,* 735 N.W.2d 295, 311 (Minn. 2007) (holding that privilege against self-incrimination can survive exhaustion of a direct appeal). Although appellant claims that Back's testimony would have produced exculpatory evidence, he has not shown how that evidence would have differed from Back's statement to police that was admitted at trial. Thus, appellant has not shown that the district court's decision prejudiced him by materially affecting the outcome of the trial, and the district court's decision to deny a further continuance did not violate appellant's right to present a complete defense.

## II

When reviewing a claim of insufficient evidence to support a conviction, this court painstakingly reviews the record to determine "whether the facts in the record and the legitimate inferences drawn from them would permit the [factfinder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt." *Davis v. State,* 595 N.W.2d 520, 525 (Minn. 1999) (quotation omitted). This court reviews the record in the light most favorable to the verdict. *State v. Miles,* 585 N.W.2d 368, 372 (Minn.1998). The factfinder is the exclusive judge of witness credibility, and this court assumes the factfinder believed the evidence supporting the state's case and disbelieved contrary evidence. *Dale v. State,* 535 N.W.2d 619, 623 (Minn.1995). When determining the sufficiency of evidence, this court's review of bench trials is the same as the review of jury trials. *Davis,* 595 N.W.2d at 525.

To sustain a conviction of second-degree intentional murder, the state must prove beyond a reasonable doubt that the defendant caused the death of a person "with intent to effect the death of that person." Minn.Stat. § 609.19, subd. 1(1) (2006). " 'With intent to' . . . means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn.Stat. § 609.02, subd. 9(4) (2006).

Because the intent element of a crime involves a state of mind, it is generally proved circumstantially, based on inferences from the actions and words of the defendant, given the totality of the circumstances. *State v. Cooper,* 561 N.W.2d 175, 179 (Minn.1997). Circumstantial evidence is weighed the same as other kinds of evidence. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). But to sustain a conviction based on circumstantial evidence, this court must also consider "whether the reasonable inferences that can be drawn from the circumstances proved support a rational hypothesis other than guilt." *State v. Stein,* 776 N.W.2d 709, 714 (Minn.2010). In reviewing circumstantial evidence, we do not re-weigh the evidence, but defer to the factfinder's

resolution of any conflicts in evidence relating to directly proven facts. *Id.* We then independently examine the reasonableness of all inferences that may be drawn from the circumstances proved, to determine whether those inferences "are consistent with guilt and inconsistent with any rational hypothesis other than guilt." *Id.* at 718.

Appellant argues that the circumstantial evidence is insufficient to support his conviction because the evidence supports the alternative rational hypothesis that the gun discharged accidentally during a struggle. To support this theory, appellant points to evidence that one witness saw Holliday lying on the deck, with appellant on top of him; that there was a physical struggle; and that Holliday was shot in the armpit and his shirt did not have a bullet hole, suggesting that Holliday and appellant were in close physical contact. Appellant also argues that the presence of a live round of ammunition near Holliday's body is consistent with a rational explanation that it fell out of appellant's pocket; that appellant's flight after the shooting could have reflected panic, rather than guilt; and that his phone call to the house after the shooting could have reflected his belief that Holliday was still alive.

But "possibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories seem unreasonable." *State v. Hughes*, 749 N.W.2d 307, 313 (Minn.2008) (quotations omitted). The district court weighed the evidence and found that the following circumstances were proved: (1) appellant pulled the trigger of the gun at least once; (2) the shot was fired from close range; and (3) appellant knew that there was a live round in the chamber of the gun. The court also found that the gun expert at trial, whom the district court found to be "highly credible,"

testified that the gun used in the shooting could not easily be discharged accidentally. Based on the circumstances proved surrounding the discharge of the gun, no reasonable inference supports appellant's theory that the gun accidentally discharged.

### DECISION

We affirm both courts in their respective rulings. Specifically, the first district court did not violate appellant's constitutional right to present a defense by declining to order the state to grant use immunity for Back's testimony; the state's litigation tactics did not constitute prosecutorial misconduct; and appellant has not shown how Back's testimony would supply exculpatory evidence that materially differed from her police statement admitted at trial. The second district court also did not abuse its discretion by denying an additional continuance of appellant's trial. The evidence is sufficient to support appellant's conviction.

**Affirmed.**