*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1127**

State of Minnesota,
Respondent,

vs.

Nicolas Martinez-Feliciano,
Appellant.

**Filed July 5, 2016
Affirmed
Schellhas, Judge**

Dakota County District Court
File No. 19HA-CR-14-1655

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Elizabeth Swank, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Schellhas, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant argues that his conviction of first-degree criminal sexual conduct is not supported by sufficient evidence. We affirm.

**FACTS**

On May 9, 2014, at about 9:30 p.m., M.M. returned home after running an errand. As she approached the bedroom that she shared with her boyfriend, appellant Nicolas Martinez-Feliciano, and her nine-year-old daughter C.M., M.M. noticed that the door to the bedroom was "kind of closed." M.M. found this to be unusual because, as she put it, "we would never close that door." M.M. entered the darkened room and saw movement. She turned on the light and saw C.M. lying "at the edge of the bed" covered with a blanket and Martinez-Feliciano standing "by the corner of the bed" with his pants unzipped and "somewhat down."

M.M. began hitting Martinez-Feliciano and yelling for her son. When Martinez-Feliciano fled to the bathroom, M.M. approached C.M., hugged her, and asked her what had happened. M.M. then noticed that C.M.'s pants and underwear were pulled down almost to her knees. M.M. touched C.M.'s legs and asked her, "'[D]id he touch you here?'" C.M. said, "'[N]o, where he touch[ed] me was here,' pointing her finger to in between her legs." M.M. went into the bathroom and confronted Martinez-Feliciano, who responded, "'I didn't do anything, I didn't do anything.'" With the assistance of her son, M.M. removed Martinez-Feliciano from their home. According to M.M., "When we got

2

[Martinez-Feliciano] out of the house he knelt down and he said, '[P]lease forgive me, I won't do that again.'"

M.M. and her son summoned and spoke with police, who located Martinez-Feliciano at a neighbor's home and arrested him. C.M. was transported by ambulance to a hospital, where Laurel Edinburgh, a pediatric nurse practitioner, spoke with M.M. and conducted a medical interview and examination of C.M. in the early morning hours of May 10, 2014. C.M. indicated to Edinburgh that Martinez-Feliciano touched C.M.'s genitals with his penis on "many" occasions, including the previous night. C.M. also indicated to Edinburgh that Martinez-Feliciano ejaculated onto C.M.'s body on at least one occasion but that he did not ejaculate onto her body the previous night. During the medical examination, Edinburgh swabbed C.M.'s genital area; forensic testing of the swab showed the presence of male DNA of which Martinez-Feliciano could not be excluded as being a contributor. Edinburgh ultimately made a clinical diagnosis of child sexual abuse.

Respondent State of Minnesota charged Martinez-Feliciano with first-degree criminal sexual conduct (bare genital-to-genital sexual contact between complainant under 13 years of age and actor more than 36 months older than complainant), second-degree criminal sexual conduct (multiple instances of sexual contact where actor has significant relationship with complainant under 16 years of age), second-degree criminal sexual conduct (sexual contact between complainant under 13 years of age and actor more than 36 months older than complainant), and fifth-degree criminal sexual conduct (masturbation or lewd exhibition of genitals in presence of minor).

At a three-day bench trial, the state presented the testimony of C.M., M.M., Edinburgh, police officers, and forensic scientists. The state also admitted exhibits, including a video recording of Edinburgh's medical interview of C.M. and an audio recording of Edinburgh's medical examination of C.M. Martinez-Feliciano testified in his own defense, claiming that he entered the shared bedroom on the evening of May 9, 2014, to charge his phone and denying that he had sexual contact with C.M. on that night or at any other time. The district court then found Martinez-Feliciano guilty of first-degree criminal sexual conduct, guilty of both counts of second-degree criminal sexual conduct, and not guilty of fifth-degree criminal sexual conduct, and it sentenced Martinez-Feliciano to 150 months' imprisonment for first-degree criminal sexual conduct.

This appeal follows.

## DECISION

"[Appellate courts] use the same standard of review in bench trials and in jury trials in evaluating the sufficiency of the evidence." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). Under that standard, "[appellate courts] carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the [fact-finder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015), *cert. denied*, 136 S. Ct. 509 (2015). "[Appellate courts] view the evidence presented in the light most favorable to the verdict, and assume that the fact-finder disbelieved any evidence that conflicted with the verdict." *Id.* "The verdict will not be overturned if the fact-finder, upon application of the presumption of innocence and the State's burden of

4

proving an offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense." *Id.*

Martinez-Feliciano challenges the sufficiency of the evidence to support his conviction of first-degree criminal sexual conduct. The elements of that crime are (1) a complainant under 13 years of age, (2) an actor more than 36 months older than the complainant, and (3) sexual contact between the actor and the complainant, defined as "the intentional touching of the complainant's bare genitals . . . by the actor's bare genitals . . . with sexual . . . intent." Minn. Stat. §§ 609.341, subd. 11(c), .342, subd. 1(a) (2012). According to Martinez-Feliciano, the state's evidence was insufficient to prove that he had sexual contact with C.M. on May 9, 2014.

But the state presented direct evidence of sexual contact: C.M.'s testimony that, on May 9, 2014, Martinez-Feliciano pulled down her pants and underwear, lay down on top of her in the shared bed, and "put [his penis] in [her vagina]." The state introduced evidence to corroborate C.M.'s testimony, including M.M.'s testimony that on May 9 she entered the shared bedroom to find C.M. lying "at the edge of the bed" with her pants and underwear halfway down her legs and Martinez-Feliciano standing "by the corner of the bed" with his pants unzipped and "somewhat down." C.M.'s testimony was corroborated further by evidence that a swab of C.M.'s genital area revealed the presence of male DNA of which Martinez-Feliciano could not be excluded as being a contributor. Moreover, C.M.'s testimony was largely consistent with her prior disclosures of sexual abuse, which were introduced into evidence through the testimony of M.M. and Edinburgh and through the recordings of Edinburgh's medical interview and examination of C.M. And M.M.

5

testified that after she and her son removed Martinez-Feliciano from their home shortly after Martinez-Feliciano's alleged sexual abuse of C.M., Martinez-Feliciano "knelt down and he said, '[P]lease forgive me, I won't do that again.'"

The district court found the testimony of C.M. and M.M. to be credible and found that Martinez-Feliciano's denials of sexual contact with C.M. were not credible. The court further found that "any doubt as to whether [the male] DNA [on the swab taken from C.M.'s genital area] came from [Martinez-Feliciano] is so minute as to be unreasonable." We accept these findings without reservation. *See State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (recognizing that "the trier of fact is in the best position to determine credibility and weigh the evidence"); *State v. Super*, 781 N.W.2d 390, 396 (Minn. App. 2010) (stating that "[t]he factfinder is the exclusive judge of witness credibility"), *review denied* (Minn. June 29, 2010).

Against the backdrop of the district court's underlying findings, and viewed in the light most favorable to the guilty verdict, the record shows that the facts and the legitimate inferences drawn therefrom permitted the court reasonably to find that Martinez-Feliciano, with sexual intent, intentionally touched C.M.'s bare genitals with his own bare genitals on May 9, 2014. We conclude that sufficient evidence supports Martinez-Feliciano's conviction of first-degree criminal sexual conduct.

**Affirmed.**

6