STATE OF MINNESOTA

IN SUPREME COURT

A14-0084

Hennepin County

Dietzen, J.
Concurring, Anderson, J.
Concurring, Lillehaug, J.
Dissenting, Page, J.

LaMonte Rydell Martin,

Appellant,

vs.

Filed: June 17, 2015
Office of Appellate Courts

State of Minnesota,

Respondent.

_____

Michael McGlennen, Minneapolis, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant Hennepin County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The postconviction court did not abuse its discretion by concluding, without requiring the witness to testify, that the witness validly invoked the privilege against self-incrimination through his attorney at an evidentiary hearing.  Moreover, the court did not err by denying the defendant's motion, brought under Minn. Stat. § 609.09,

1

subd. 1 (2014), to grant a witness immunity to testify to overcome a claim of the privilege against self-incrimination.

2.      The postconviction court did not abuse its discretion by denying the appellant's first petition for postconviction relief on the ground that the witness recantation claim lacked merit.

3.      Because *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012) does not apply retroactively, appellant's second petition for postconviction relief is time-barred under Minn. Stat. § 590.01, subd. 4(a) (2014), and therefore the postconviction court did not abuse its discretion in denying the second petition.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

DIETZEN, Justice.

Appellant LaMonte Rydell Martin was found guilty of first-degree murder committed for the benefit of a gang and first-degree premeditated murder. The district court entered judgment of conviction for first-degree premeditated murder, and imposed a sentence of life without the possibility of release (LWOR). The conviction and sentence were affirmed on direct appeal. *State v. Martin (Martin I)*, 773 N.W.2d 89 (Minn. 2009).

In August 2011, Martin filed a petition for postconviction relief alleging, among other things, recantations by two witnesses. On appeal, we reversed in part, concluding that Martin was entitled to an evidentiary hearing on his witness recantation claim, but affirmed the denial of his other claims. *Martin v. State (Martin II)*, 825 N.W.2d 734

2

(Minn. 2013). We remanded the case to the postconviction court for an evidentiary hearing on the witness recantation claim. *Id.* at 743. Subsequently, Martin filed a second petition for postconviction relief, alleging that his life sentence is unconstitutional under the Federal and State Constitutions, and claiming he is entitled to the retroactive application of *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012). On remand, the postconviction court consolidated both matters, conducted an evidentiary hearing, and then denied Martin's witness recantation claim from his first postconviction petition, and denied his second postconviction petition. We affirm.

Martin was charged by criminal complaint with aiding and abetting first-degree premeditated murder, Minn. Stat. § 609.185(a)(1) (2014), and committing a crime for the benefit of a gang, Minn. Stat. § 609.229, subd. 2 (2014), arising out of the execution-style homicide of Christopher Lynch on May 3, 2006. The murder occurred six weeks before Martin's eighteenth birthday. Pursuant to Minn. Stat. §§ 260B.007, subd. 6(b); 260B.101, subd. 2 (2014), Martin was automatically certified as an adult and indicted by a grand jury on both charges. The grand jury also indicted Cornelius Jackson and Jonard McDaniel for murder for their role in aiding Martin and for committing a crime for the benefit of a gang.

At trial the State presented evidence that Christopher Lynch was an innocent victim and that his murder was "collateral damage" in an on-going dispute between Martin's gang, the One-Nines, and a rival gang. The identity of the shooters was a highly contested issue at trial. Only two of the State's eyewitnesses, Jermaine Mack-Lynch and his older brother Charles Pettis, were able to provide direct evidence that Martin and

3

Jackson shot Lynch. Ten-year-old S.H. witnessed the shooting from his back porch. He could not see the two shooters' faces, but he did observe that the shooters were black men wearing hats.[1]

Following trial, the jury found Martin guilty of both offenses. At the sentencing hearing, Martin presented evidence in support of his argument that, due to his age and mental capacity, the imposition of a LWOR sentence constituted cruel and/or unusual punishment under both the Federal and State Constitutions. The district court disagreed, explaining that Martin was less than two months away from his eighteenth birthday when he committed the offense, and therefore his "age of 17 is not a factor that renders the punishment of life in prison without parole unconstitutional." Martin was convicted of first-degree premeditated murder and the district court imposed a LWOR sentence.

On direct appeal, Martin asserted nine claims, including a claim that his LWOR sentence constituted cruel and unusual punishment because he was a juvenile at the time of the crime. *Martin I*, 773 N.W.2d at 97.[2] We affirmed Martin's conviction and

---

[1]   A more detailed description of the facts of this case can be found in *Martin I*, 773 N.W.2d at 95-97, and *Martin II*, 825 N.W.2d at 737-38.

[2]   Martin asserted eight additional claims on direct appeal: (1) the evidence was not sufficient to support the conviction of crime committed for the benefit of a gang; (2) the State committed a discovery violation when it failed to disclose the notes of a police investigation; (3) his trial counsel was ineffective when she failed to investigate the State's "key" witnesses; (4) the district court erred when it joined Martin's case with his co-defendants' cases for trial; (5) the district court erred when it sustained the prosecutor's peremptory challenge of a prospective juror; (6) the district court erred when it refused to play audio and video evidence of the scene; (7) the district court erred in allowing Pettis to testify after he heard the testimony of another witness; and (8) the

(Footnote continued on next page.)

sentence, concluding, among other things, that the punishment of LWOR was not unconstitutional as applied to Martin. *Id.* at 99.

In August 2011, Martin filed a petition for postconviction relief pursuant to Minn. Stat. § 590.01, subd. 1 (2014). The petition alleged seven claims, including a claim that Martin was entitled to an evidentiary hearing and a new trial based on the recantations of Mack-Lynch and Pettis. The postconviction court concluded that Martin failed to satisfy the three-part test articulated in *Larrison v. United States,* 24 F.2d 82, 87-88 (7th Cir. 1928), to establish his witness recantation claim, and therefore he was not entitled to an evidentiary hearing under Minn. Stat. § 590.04, subd. 1 (2014). The court denied Martin's other claims. On appeal, we reversed the summary denial of Martin's witness recantation claim, but affirmed the denial of Martin's other claims. *Martin II*, 825 N.W.2d at 746. We concluded that Martin presented competent material evidence that, if found to be true, could satisfy the *Larrison* test and warrant a new trial. *Id.* at 743. Therefore, we remanded for an evidentiary hearing "to assess the credibility of the recanting witnesses, and to determine whether Martin satisfies the *Larrison* factors, and therefore is entitled to a new trial." *Id*. at 744.[3]

(Footnote continued from previous page.)
prosecutor committed reversible error during witness questioning and closing argument. *See Martin*, 773 N.W.2d at 97-110.

[3]    In support of his witness recantation claim, Martin also submitted affidavits of fellow inmate Jesse Walker and defense investigator Michael Grostyan. Because we concluded that a postconviction evidentiary hearing was required based on the affidavits of Mack-Lynch and Pettis, we did not consider the affidavits of Walker and Grostyan.

(Footnote continued on next page.)

Subsequently, Martin filed a second petition for postconviction relief arguing that his LWOR sentence: (1) violates his substantive constitutional rights under the Eighth Amendment to the U.S. Constitution, which prohibits cruel and unusual punishment, and Article I, Section 5 of the Minnesota Constitution, which prohibits cruel or unusual punishment, in light the United States Supreme Court's holding in *Miller v. Alabama*, ___U.S. ___, 132 S. Ct. 2455 (2012); (2) violates his Sixth Amendment right to a jury trial; (3) violates his Fourteenth Amendment right to equal protection of the laws; and (4) should be modified in the interests of justice. The State opposed Martin's second petition, arguing that Martin's claims were procedurally barred, time-barred, and moot.

The postconviction court conducted an evidentiary hearing in September 2013. The court received into evidence the affidavits of Mack-Lynch and Pettis recanting their trial testimony. Martin subpoenaed Pettis to testify, but Pettis did not appear at the hearing. Instead, Pettis's attorney appeared and stated Pettis would invoke the protections of the Fifth Amendment to the United States Constitution and Article I, Section 7 of the Minnesota Constitution, and moved to quash the subpoena. The court granted the motion to quash the subpoena. Martin did not subpoena Mack-Lynch, did not call him as a witness, and rested without calling any further witnesses.

The State presented evidence that Mack-Lynch's and Pettis's recantations in their affidavits were false and were the product of Martin's concerted criminal activity with

(Footnote continued from previous page.)
*Martin II*, 825 N.W.2d at 739 n.5. The affidavits of those witnesses are no longer at issue in this case.

6

others to bribe, threaten, and coerce Mack-Lynch and Pettis to recant. Specifically, the State introduced the charging documents, guilty plea, and sentencing orders in a related witness tampering case, in which Martin pleaded guilty and was convicted of two counts of bribery for his conduct regarding witnesses Mack-Lynch and Pettis. At the plea hearing in the witness tampering case, Martin admitted that he, with the assistance of others, provided monetary payoffs to Mack-Lynch and Pettis to obtain their recanting affidavits.[4]

Moreover, the state introduced into evidence Mack-Lynch's testimony given in the case of *State v. Bobo*. In that testimony, Mack-Lynch admitted that his affidavit for Martin in this case was completely false. Mack-Lynch explained that Martin and his "gang friends" threatened Mack-Lynch's family in order to coerce Mack-Lynch into signing the affidavit. Additionally, they later offered Mack-Lynch money to not talk to an investigator. The State also presented the testimony of other witnesses, including an investigator with the Department of Corrections who testified that she had investigated potential witness tampering involving members of the One-Nines gang, and had learned that Mack-Lynch and Pettis were being pressured to recant their testimony in Martin's trial. As part of the investigation, she recovered letters from Martin showing that he was implementing a plan to bribe, threaten, and coerce Mack-Lynch and Pettis to recant their trial testimony.

---

[4]     Martin was assisted by nine individuals, including Hakeem Flax, Jesse Walker, Ramonda Rondell Bumpus, and Martin's mother, Heidi Mastin. As a result of the criminal misconduct, all nine of Martin's co-defendants pleaded guilty and were convicted of various crimes.

7

The postconviction court denied Martin's first petition, concluding that Martin had failed to establish the three prongs of the *Larrison* test for witness recantation claims. Specifically, the court found that the Mack-Lynch and Pettis affidavits were the product of threats, coercion, and bribes, and that Martin purposely and knowingly filed false documents and perverted the legitimate use of legal process in his fraudulent attempt to obtain a new trial. The court denied Martin's second petition, concluding that Martin was not entitled to the retroactive benefit of *Miller,* and therefore the petition was: (1) procedurally barred under *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976); and (2) time-barred under Minn. Stat. § 590.01, subd. 4(a). The court also rejected Martin's Equal Protection and Sixth Amendment jury trial claims.

Martin argues in this appeal that the postconviction court erred by: (1) allowing Pettis to invoke his Fifth Amendment privilege against self-incrimination without requiring Pettis to testify at the evidentiary hearing; (2) concluding that the evidence was not sufficient to support Martin's first petition for postconviction relief; and (3) concluding Martin's sentence is constitutional and that he is not entitled to the retroactive benefit of *Miller*.

I.

We review a postconviction court's legal determinations de novo, and its factual findings for clear error. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "It is for the trial court to decide whether the witness' claim of the privilege [against self-incrimination] is valid, and in making this decision the court has broad discretion." *State v. Moose*, 266 N.W.2d 521, 525 (Minn. 1978). We review a court's determination

8

regarding the validity of a witness's claim of privilege for an abuse of discretion. *State v. Manley*, 664 N.W.2d 275, 286 (Minn. 2003).

A.

Martin first argues that Pettis's invocation of the privilege against self-incrimination through his attorney at the evidentiary hearing was not valid. According to Martin, the postconviction court erred by not placing Pettis under oath and requiring him to assert the privilege to each question he was asked. Martin argues that without the opportunity to hear Pettis testify, the postconviction court did not fulfill its obligation on remand to assess the credibility of the recanting witnesses.

The Fifth Amendment of the United States Constitution and Article 1, Section 7 of the Minnesota Constitution declare that no person shall "be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V; Minn. Const. art. I, § 7. The privilege prevents an individual from being forced to "answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *see also Johnson v. Fabian*, 735 N.W.2d 295, 299 (Minn. 2007).

The United States Supreme Court has held the privilege against self-incrimination may be claimed when a witness has "reasonable cause" to apprehend danger from answering. *Ohio v. Reiner*, 532 U.S. 17, 21 (2001). The privilege extends to answers that "would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The inquiry is for the court; the witness's assertion of the privilege does not by itself establish the risk of

9

incrimination. *Id.* To sustain the privilege, it need only be evident from the implications of the setting and the questions to be asked "that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 487. Put differently, to require the witness to prove the hazard of the claim of privilege would eliminate the protection that the privilege is designed to guarantee. *Id.* at 486.

Generally, a "[p]rivilege is personal to those to whom it belongs and is waived unless asserted by them." *Esser v. Brophey*, 212 Minn. 194, 197, 3 N.W.2d 3, 4 (1942). We have, however, implicitly approved an attorney's claim of the privilege against self-incrimination for his absent client. *Moose*, 266 N.W.2d at 524-25 (rejecting ineffective assistance of counsel claim based on defense counsel's decision not to call a witness after the witness had claimed the privilege against self-incrimination through his counsel); *see also Manley*, 664 N.W.2d at 286 (concluding that trial court did not abuse its discretion when it declined, despite the request of defense counsel, to question the witness to determine whether the witness had validly invoked the privilege against self-incrimination through his counsel).

We conclude the postconviction court did not abuse its discretion in concluding that Pettis validly invoked the privilege against self-incrimination, even though it did so without Pettis being present. The privilege against self-incrimination was expressly raised by Pettis's attorney at the time Pettis was called to testify. The claim of privilege did not require Pettis's presence because the risk of self-incrimination was obvious. The only purpose for Pettis's testimony at the evidentiary hearing was to discuss his

10

conflicting statements at trial and in the affidavit. In fact, the State presented evidence that Pettis's affidavit was the product of bribes, threats, and coercion. Consequently, the court was not required to have Pettis take the stand to assert the privilege.

B.

Alternatively, Martin argues that the postconviction court erred by refusing to grant his request for judicial immunity to compel Pettis to testify at the evidentiary hearing. Martin contends that the postconviction court should have compelled Pettis to testify in order to assess the credibility of his recantation.

The general immunity statute in Minnesota, Minn. Stat. § 609.09, subd. 1 (2014), provides, in relevant part:

> In any criminal proceeding, . . . if it appears a person may be entitled to refuse to answer a question . . . on the ground that the person may be incriminated thereby, and if the prosecuting attorney, in writing, requests the . . . judge of the court in which the proceeding is pending to order that person to answer the question . . ., the judge, after notice to the witness and hearing, shall so order if the judge finds that to do so would not be contrary to the public interest and would not be likely to expose the witness to prosecution in another state or in the federal courts.

Pursuant to the statute, the court may grant the written request of the prosecuting attorney in a criminal proceeding to grant immunity to a witness in certain circumstances set forth in the statute to allow compelled testimony to overcome an assertion of the privilege against self-incrimination. *State v. Peirce*, 364 N.W.2d 801, 808-09 (Minn. 1985); *see also State ex rel. Windschitl v. Landkammer,* 299 Minn. 184, 190-91, 217 N.W.2d 494, 498-99 (1974). Thereafter, the district court must apply the statutory criteria to determine whether immunity should be granted. *See* Minn. Stat. § 609.09, subd. 1. Consequently,

11

if the defense wishes to obtain immunity for a witness, it must ask the prosecutor to make a written request to the court. *Windschitl*, 299 Minn. at 191, 217 N.W.2d at 499.

In *Peirce*, we considered whether the district court erred in concluding that in the absence of a request by the prosecutor, it lacked authority to grant a defendant's request to grant immunity to two codefendants so that they could testify in his defense. 364 N.W.2d at 808. We affirmed the district court on the ground that the "trial court . . . lack[s] the authority and power to grant immunity" even when it is alleged that the witness has important exculpatory evidence not otherwise available to the defendant. *Id.* at 809. We reasoned that allowing the defense to offer a witness immunity would be an "impermissible intrusion into prosecutorial discretion which must remain with the executive branch," and that granting such a request would be "vulnerable to manipulation and abuse by codefendants and others with a common interest in evading guilt."[5] *Id.* We observed there was no claim of prosecutorial misconduct, such as the prosecutor making a witness unavailable to testify. *Id.*

It is unclear whether Minnesota's immunity statute applies to a postconviction hearing. We conclude that even if Minn. Stat. § 609.09, subd. 1 applies, the district court

---

[5]     Our approach is consistent with the United States Supreme Court's interpretation of the federal immunity statute, 18 U.S.C. §§ 6002-6003 (2012). The Supreme Court has declined to extend the jurisdiction of the courts to include grants of judicial immunity in the absence of the formal request required by statute. *United States v. Doe*, 465 U.S. 605, 616-17 (1984). In passing the use immunity statute, "Congress gave certain officials in the Department of Justice exclusive authority to grant immunities." *Pillsbury Co. v. Conboy,* 459 U.S. 248, 253-54 (1983). The Court has interpreted this to mean that "Congress foresaw the courts as playing only a minor role in the immunizing process." *Id.* at 254 n.11.

12

did not err in denying Martin's motion. The statute clearly requires that a written request for witness immunity come from the prosecutor, which did not occur in this case. Moreover, there is no evidence that the State caused Pettis to be unavailable to testify. In fact, the evidence is that Martin engaged in criminal conduct to coerce Pettis to recant his testimony.

II.

Martin next argues that the postconviction court erred in concluding that his witness recantation claim and his request for a new trial lacked merit. We review the denial of a petition for postconviction relief for an abuse of discretion. *Riley*, 819 N.W.2d at 167. Specifically, we review a postconviction court's legal conclusions de novo. *Andersen v. State*, 830 N.W.2d 1, 6 (Minn. 2013). But we will not reverse the court's factual findings unless they are clearly erroneous. *Riley*, 819 N.W.2d at 167.

To obtain a new trial on the ground of newly discovered evidence of the recantation of a witness's trial testimony, we apply the three-prong *Larrison* test. *Larrison v. United States,* 24 F.2d 82, 87-88 (7th Cir. 1928); *Doppler v. State*, 771 N.W.2d 867, 872 (Minn. 2009).[6] The criteria to determine whether a defendant is entitled to a new trial on a witness recantation claim are that:  (1) the court is reasonably well-satisfied that the testimony given by a material witness was false; (2) without the false testimony the jury might have reached a different conclusion; and (3) the petitioner

---

[6]    Although *Larrison* has been overruled, *see United States v. Mitrione*, 357 F.3d 712, 718 (7th Cir. 2004), Minnesota courts continue to apply the *Larrison* test to claims of witness recantation. *Martin II*, 825 N.W.2d at 739 n.6.

was taken by surprise when the false testimony was given and was unable to respond to it or did not know of the falsity until after trial. *State v. Turnage*, 729 N.W.2d 593, 597 (Minn. 2007). The third prong of the test is not a condition precedent for granting a new trial, but is a factor the court should consider in making its determination. *Ferguson v. State*, 779 N.W.2d 555, 559 (Minn. 2010). The first criterion is satisfied when the court is reasonably certain that the recantation is genuine. *Id*. at 559-60. But a statement merely contradicting earlier testimony or a conclusion that a witness is generally unreliable is not sufficient. *Id.* at 559-60; *Opsahl v. State*, 710 N.W.2d 776, 782 (Minn. 2006). At a minimum the recantation must contain "sufficient indicia of trustworthiness." *Martin II*, 825 N.W.2d at 741.

Based on the evidence presented at the evidentiary hearing, the postconviction court concluded Martin failed to establish that the trial testimony of Mack-Lynch and Pettis was false, and therefore Martin failed to satisfy the first prong of the *Larrison* test. The court found that the affidavit executed by Mack-Lynch was, by Mack-Lynch's own admission, a complete fabrication. Further, the court found that Pettis's affidavit was the product of relentless pressure by Martin, exerted through the cooperation of fellow prison inmates, gang members, associates, and other agents, and therefore Pettis's recantation was not credible and had no indicia of reliability. Martin's testimony at his guilty plea hearing in the witness tampering case and Mack-Lynch's testimony in the *State v. Bobo* matter provided additional support that the Mack-Lynch and Pettis recantations were not genuine, credible, truthful, or reliable.

14

The postconviction court's conclusion that Martin failed to establish the first prong of the *Larrison* test is amply supported by the record. The evidentiary hearing provided strong evidence of witness tampering of Mack-Lynch and Pettis that resulted in Martin's conviction on bribery charges. This evidence coupled with the testimony of Mack-Lynch in the *State v. Bobo* matter that his recanting affidavit was false and was obtained as a result of coercion and bribery amply support the postconviction court's conclusion that Mack-Lynch's and Pettis's recantations were disingenuous.[7] Therefore, Martin failed to satisfy the first prong of the *Larrison* test, and it is not necessary to address the other *Larrison* criteria.

### III.

Martin argues in his second petition that his LWOR sentence is unconstitutional under the Federal and State constitutions. Specifically, Martin claims that his LWOR sentence: (1) violates his substantive constitutional rights under the Eighth Amendment to the U.S. Constitution prohibiting cruel and unusual punishment and Article I, Section 5 of the Minnesota Constitution in light of *Miller*, ___ U.S. at ___, 132 S. Ct. at 2455; (2) violates his Sixth Amendment right to trial by jury; (3) violates his Fourteenth Amendment right to equal protection of the laws; and (4) should be modified in the

---

[7] In *Martin II*, we stated that an evidentiary hearing was required to assess the credibility of Mack-Lynch's and Pettis's postconviction testimony. Specifically we stated that "when viewed in a light most favorable to the petition, the Mack-Lynch and Pettis affidavits present prima facie evidence of the first prong of the *Larrison* test." *Martin II*, 825 N.W.2d at 743. On remand, the postconviction court conducted the evidentiary hearing, which produced evidence that Martin engaged in a concerted effort of witness tampering and bribery of Mack-Lynch and Pettis that ultimately resulted in Martin's conviction of bribery.

interests of justice. Martin acknowledges that the two-year time bar for postconviction relief under Minn. Stat. § 590.01, subd. 4(a), expired on January 6, 2012, and that he did not file his second petition until July 23, 2013, but Martin contends that his *Miller* claim is timely under Minn. Stat. § 590.01, subd. 4(b)(3), which is an exception to the time-bar for a new interpretation of federal law that is "retroactively applicable to the petitioner's case." Specifically, Martin contends that the holding of *Miller,* ___ U.S. at ___, 132 S. Ct. at 2455, applies retroactively to him. Alternatively, Martin argues that his claims should be reviewed in the interests of justice. Minn. Stat. § 590.01, subd. 4(b)(5).

The postconviction court concluded that Martin's interests of justice argument lacked merit because it was not supported by any evidence. Similarly, Martin makes no showing in his materials to this Court that his claim should be reviewed in the interests of justice. Therefore, Martin must show that *Miller* applies retroactively to him to avoid having his petition be time-barred under Minn. Stat. § 590.01, subd. 4(a).

A.

In *Miller*, the United States Supreme Court considered whether the imposition of a mandatory life sentence without the possibility of release for those under the age of 18 at the time of their crimes violated the Eighth Amendment's prohibition against cruel and unusual punishment. ___ U.S. at ___, 132 S. Ct. at 2460. The case involved the consolidated appeals of two 14-year-olds convicted of homicide.[8] *Id.* The Court

___

[8] The two cases were *Jackson v. Hobbs* and *Miller v. Alabama.* The *Jackson* case was before the Court on a writ of certiorari from a decision of the Arkansas Supreme Court that affirmed the dismissal of Jackson's state petition for habeas corpus.
(Footnote continued on next page.)

16

concluded that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at ___, 132 S. Ct. at 2469. We have previously held that the *Miller* rule does not apply retroactively to a juvenile whose LWOR sentence became final before the *Miller* rule was announced. *See Chambers v. State*, 831 N.W.2d 311, 331 (Minn. 2013); *Roman Nose v. State,* 845 N.W.2d 193, 200 (Minn. 2014).

Martin contends that we should reconsider our decisions in *Chambers* and *Roman Nose* in light of the federal district court decision, *Flowers v. Roy,* Civ. No. 13-1508 (JNE/SER), 2014 WL 1757898, at *1 (D. Minn. May 1, 2014), which held that *Miller* applies retroactively to a juvenile seeking collateral review of a LWOR sentence. The Eighth Circuit Court of Appeals, however, has concluded that *Miller* is not retroactively applicable to cases on collateral review. *Martin v. Symmes*, 782 F.3d 939, 943 (8th Cir. 2015). Because Martin has not raised a compelling reason for us to reconsider our previous decisions on this issue, we conclude, as we did in *Chambers* and *Roman Nose*, that *Miller* does not apply retroactively to a juvenile whose LWOR sentence became final before the *Miller* rule was announced.[9]

---

(Footnote continued from previous page.)
*Miller,*___ U.S. at ___, 132 S. Ct. at 2461, 2463. In *Miller,* the Court granted certiorari to review a decision by the Alabama Court of Criminal Appeals that affirmed Miller's conviction and sentence on direct appeal. *Id.* at ___, 132 S. Ct. at 2462-63.

[9] The United States Supreme Court has not yet addressed the question of *Miller* retroactivity. We note that the Supreme Court has granted certiorari in *Montgomery v. Louisiana*, which presents the questions of whether: (1) the United States Supreme Court has jurisdiction to decide whether the Supreme Court of Louisiana correctly refused to

(Footnote continued on next page.)

Martin also claims that his sentence of LWOR violates his Sixth Amendment right to a jury trial and Fourteenth Amendment right to equal protection of the laws. But Martin's claims rest upon *Miller* being applied retroactively to him, a proposition we have previously rejected. We therefore reject these claims as well.

We conclude that Martin's second petition for postconviction relief is time-barred under Minn. Stat. § 590.01, subd. 4(a). Because *Miller* does not apply retroactively to Martin, his second petition does not fall within the exception in Minn. Stat. § 590.01, subd. 4(b)(3). Additionally, Martin has failed to argue any basis to support his claim that his petition should be reviewed in the interests of justice. We, therefore, affirm the postconviction court's denial of Martin's second petition for postconviction relief.

Affirmed.

(Footnote continued from previous page.)
give retroactive effect in this case to the decision in *Miller*; and (2) *Miller* adopts a new substantive rule that applies retroactively on collateral review to juveniles serving LWOR sentences. *See State v. Montgomery*, 141 So. 3d 264 (La. 2014), *cert. granted*, ___ U.S. ___, 135 S. Ct. 1546 (Mar. 23, 2015)

CONCURRENCE

ANDERSON, Justice (concurring).

The majority correctly concludes that Martin is not entitled to retroactive application of *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012), under *Chambers v. State*, 831 N.W.2d 311, 331 (Minn. 2013), and *Roman Nose v. State*, 845 N.W.2d 193, 200 (Minn. 2014). But I write separately, as I did in *Chambers* and *Roman Nose*, to reiterate the need for resolution of this issue by the United States Supreme Court, and failing action in that forum, additional attention from our court.[1]

In *Miller*, the Supreme Court fashioned a straightforward rule of seemingly universal application: "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." ___ U.S. at ___, 132 S. Ct. at 2464. Yet, application of *Miller* to cases on collateral review has been anything but universal. Several state appellate courts have held that *Miller* presents a substantive rule of constitutional criminal procedure that applies retroactively to cases on collateral review,[2] while other state and federal courts,

---

[1]    Although it appeared that the Supreme Court was prepared to answer this question in *State v. Toca*, 141 So. 3d 265 (La. 2014), that case has been dismissed. *Toca v. Louisiana*, ___ U.S. ___, 135 S. Ct. 1197 (2015) (dismissing writ of certiorari). The Court now seeks to resolve this question in another case. *See State v. Montgomery*, 141 So. 3d 264 (La. 2014), *cert. granted*, ___ U.S. ___, 135 S. Ct. 1546 (Mar. 23, 2015).

[2]    *See Falcon v. State*, ___ So. 3d ___, 2015 WL 1239365, at *8 (Fla. Mar. 19, 2015); *People v. Davis*, 6 N.E.3d 709, 722 (Ill. 2014), *cert. denied*, ___ U.S. ___, 135 S. Ct. 710 (2014); *State v. Ragland*, 836 N.W.2d 107, 117 (Iowa 2013); *Diatchenko v. Dist. Attorney*, 1 N.E.3d 270, 281 (Mass. 2013); *State v. Mantich*, 842 N.W.2d 716, 731 (Neb. 2014), *cert. denied*, ___ U.S. ___, 135 S. Ct. 67 (2014); *In re State*, 103 A.3d 227, 236 (N.H. 2014), *petition for cert. filed*, No. 14-639 (U.S. Dec. 1, 2014); *Aiken v. Byars*, 765 S.E.2d 572, 575 (S.C. 2014), *cert. denied*, ___ U.S. ___, 2015 WL 730986 (June 1,
(Footnote continued on next page.)

including our own, have denied collateral application of *Miller*.[3] It is unsurprising that states have come to different conclusions, as the *Miller* rule presents both substantive and procedural characteristics. *See Roman Nose*, 845 N.W.2d at 202-04 (Anderson, G. Barry, concurring). For now, I concur with the result here, based on existing precedent.

---

(Footnote continued from previous page.)
2015); *Ex parte Maxwell*, 424 S.W.3d 66, 75-76 (Tex. Crim. App. 2014); *State v. Mares*, 335 P.3d 487, 508 (Wyo. 2014).

[3] *See Johnson v. Ponton*, 780 F.3d 219, 226 (4th Cir. 2015); *Martin v. Symmes*, 782 F.3d 939, 944-45 (8th Cir. 2015); *People v. Carp*, 852 N.W.2d 801, 832, 841 (Mich. 2014), *petition for cert. filed*, No. 14-824 (U.S. Jan. 13, 2015); *Chambers*, 831 N.W.2d at 331; *Commonwealth v. Cunningham*, 81 A.3d 1, 11 (Pa. 2013), *cert. denied*, ___ U.S. ___, 134 S. Ct. 2724 (2014).

# CONCURRENCE

LILLEHAUG, Justice (concurring).

On whether *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455 (2012), should be applied retroactively, I concur based on the doctrine of stare decisis, as I did in *Roman Nose v. State*, 845 N.W.2d 193, 204 (Minn. 2014) (Lillehaug, J., concurring).

Four other state high courts have held that *Miller* is not retroactive, while ten disagree. *See Martin v. Symmes*, 782 F.3d 939, 945 (8th Cir. 2015). I share Justice G. Barry Anderson's hope that the issue will soon be resolved by the United States Supreme Court. Whether *Miller* is retroactive should not vary from state to state and from juvenile to juvenile.

DISSENT

PAGE, Justice (dissenting).

I respectfully dissent.  I do so for the reasons set forth in section I of my dissent in *Chambers v. State*, 831 N.W.2d 311, 342-44 (Minn. 2013) (Page, J., dissenting), and my dissent in *Roman Nose v. State*, 845 N.W.2d 193, 204-05 (Minn. 2014) (Page, J., dissenting).