*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0203**

George Douglas Gant, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent

**Filed September 21, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR127032

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Connolly, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant George Gant challenges the denial of his petition for postconviction relief. Gant argues that the postconviction court erred by (1) failing to grant him an evidentiary hearing and (2) failing to grant him a new trial. We affirm.

## FACTS

Appellant George Gant and J.M. have dated on and off since 2004 and have a son together. By 2012, J.M. and their son lived in an apartment in Bloomington. Gant was not on the lease, but stayed over a couple nights per week.

At around 8:00 a.m. on February 19, 2012, J.M. woke to the sound of Gant attempting to force his way through the barricaded and locked front door of J.M.'s apartment. J.M. testified that she had barricaded the door the night before with a chair and boxes so that she could hear if Gant tried to break in. The two had broken up about a week prior, and J.M. was afraid that Gant had not accepted that their relationship was over. J.M. testified that she did not give Gant consent to enter the apartment.

Gant eventually broke through the chain lock on J.M.'s front door and forced his way through J.M.'s locked bedroom door. When J.M. tried to call the police, Gant took her phone. Gant assaulted J.M., grabbing her neck and punching her while she was on the ground. Gant eventually fled, and J.M. crawled across the hallway to her neighbor's apartment who called 911 on her behalf. Gant was charged with felony domestic assault and interference with a 911 call. The complaint was later amended to add charges of

2

first-degree burglary and pattern of stalking conduct. These last two counts are at issue on appeal.

At trial, the state offered evidence of a number of previous acts which occurred prior to the incident detailed above. On February 7, 2007, while J.M. was pregnant with their child, Gant pushed J.M. to the ground and choked her. Gant pleaded guilty to domestic assault by strangulation in relation to this incident. In September 2008, Gant became angry at J.M. and punched and choked her. This incident resulted in the issuance of a domestic abuse no contact order (DANCO). Gant later pleaded guilty to violating this order. J.M. also testified about incidents in 2009, in which Gant "put[] his hands on [her]," an incident in 2011, in which Gant destroyed a television, and the 2012 breakup in which Gant got angry, pushed J.M. down, and started to kick her. After the breakup, J.M. obtained an order for protection (OFP), but it was never served on Gant.

Gant testified that he was not present during the February 19 incident, that he lived with J.M., and that he was welcome in her apartment. Gant claimed that the other incidents either did not happen or were exaggerated. The jury convicted Gant on all counts, and he was sentenced to 129 months in prison on the burglary charge. Gant filed a petition for postconviction relief alleging, inter alia, that (1) he was entitled to an evidentiary hearing because J.M. had recanted part of her testimony and (2) he was entitled to a new trial because the district court's instructions on the pattern of stalking conduct were erroneous. The postconviction court denied Gant's requests, and this appeal followed.

3

## D E C I S I O N

**I.      The postconviction court did not err when it denied Gant an evidentiary hearing.**

Gant first argues that the postconviction court erred when it refused to grant him an evidentiary hearing based on J.M. recanting part of her testimony. In his postconviction petition, Gant submitted an affidavit from J.M. which stated that she had "invited" Gant to "come back home and talk" prior to the February 19 incident. Gant argues that this recantation entitles him to an evidentiary hearing where he would be allowed to introduce evidence that would show that he is not guilty of burglary. The ultimate decision by the postconviction court to grant or deny an evidentiary hearing is reviewed for an abuse of discretion. *Caldwell v. State*, 853 N.W.2d 766, 770 (Minn. 2014). The postconviction court's underlying factual findings are examined for clear error, while its legal conclusions are reviewed de novo. *Id.*

"A postconviction petitioner is entitled to an evidentiary hearing '[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief.'" *Id.* (quoting Minn. Stat. § 590.04, subd. 1 (2012)).[1] There are two requirements for an evidentiary hearing. First, "the allegations in the petition must have factual support that carries sufficient indicia of trustworthiness." *Id.* (quotation omitted). Second, in examining whether a petitioner is entitled to an evidentiary hearing, "we assume the truth of [a petitioner's] allegations that bear sufficient indicia of

---

[1] Although *Caldwell* quotes the 2012 version of Minn. Stat. § 590.04, subd. 1, there have been no amendments to that statute and its language applies here.

trustworthiness" and then "determine whether those allegations would be legally sufficient to entitle [a petitioner] to relief if they were proven at a hearing." *Id.* at 772.

## A. Sufficient indicia of trustworthiness

The postconviction court concluded that Gant satisfied the first requirement by submitting a sworn affidavit from J.M. Our supreme court has recognized the trustworthiness of a sworn affidavit, *id.* at 770, and the state does not argue that J.M.'s affidavit was not sufficiently trustworthy, *State v. Powers*, 654 N.W.2d 667, 676 (Minn. 2003) ("Issues not addressed by a party's brief are considered waived . . . ."). The first requirement is thereby satisfied.

## B. Whether Gant is entitled to relief

In analyzing the second requirement, we assume the truth of the allegations in the affidavit. *Caldwell*, 853 N.W.2d at 772. Whether a petitioner is entitled to an evidentiary hearing based on those allegations depends on the legal standard for the particular type of claim alleged. *Id.* at 771. Here, Gant alleges that J.M.'s trial testimony was false, which is a type of allegation evaluated under the *Larrison* standard. *See Martin v. State*, 865 N.W.2d 282, 290 (Minn. 2015) (applying the test set forth in *Larrison v. United States*, 24 F.2d 82, 87-88 (7th Cir. 1928)).[2] Under the *Larrison* standard, three prongs must be satisfied before a petitioner is entitled to an evidentiary hearing: (1) "the court is reasonably well satisfied that the testimony given by a material witness was false;"

---

[2] In *Caldwell*, the supreme court's adoption of the *Larrison* standard applied specifically to requests for a new trial. 322 N.W.2d at 584. The supreme court has, however, extended the *Larrison* analysis to apply to requests for evidentiary hearings based on witness recantation. *See Caldwell*, 853 N.W.2d at 772-78 (applying the three-pronged *Larrison* standard to reverse and remand for an evidentiary hearing).

5

(2) the false testimony might have affected the verdict; and (3) "the petitioner was taken by surprise when the false testimony was given and was unable to meet it or did not know [it] was false until after trial." *Caldwell*, 853 N.W.2d at 772. The first two prongs are compulsory, whereas the third prong is a relevant but not an absolute condition precedent to granting relief. *Id*.

Gant has the burden of proving that he is entitled to the relief requested. *State v. Turnage*, 729 N.W.2d 593, 597 (Minn. 2007). If we find that Gant has failed any prong, then the analysis of the others is not necessary. *See Ortega v. State*, 856 N.W.2d 98, 104 (Minn. 2014). Because our analysis of the second *Larrison* prong is dispositive of this appeal, we need not consider the first or third prong.

"The second *Larrison* prong does not ask whether the evidence is *sufficient* to convict the defendant in the absence of the recanted testimony." *Id*. at 104. Instead, a petitioner "need only show that it *might* have made a difference to the jury's verdict if the recanted testimony had not been presented at trial." *Id*. In this context, "might" means "something more than an outside chance although much less than . . . would probably." *Caldwell*, 322 N.W.2d at 585 n.8 (internal quotation marks omitted).

Gant argues that absent J.M.'s false testimony that she did not give him consent to enter the apartment, the jury might have reached a different result and acquitted him of the burglary charge. Gant contends that J.M.'s current affidavit shows that Gant did not break into the apartment because he was invited in by J.M. We disagree.

"Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building" will be

6

guilty of first-degree burglary if they "assault[] a person within the building or on the building's appurtenant property." Minn. Stat. § 609.582, subd. 1(c) (2010). "Enters a building without consent" means "to enter a building without the consent of the person in lawful possession." Minn. Stat. § 609.581, subd. 4(a) (2010). "'[L]awful possession' . . . means a person who has a legal right to exercise control over the building in question. The legal right to exercise control over a building necessarily includes the right to consent to the entry of others into that building." *State v. Spence*, 768 N.W.2d 104, 108-09 (Minn. 2009). "The showing required for a petitioner to receive an evidentiary hearing is lower than that required to receive a new trial." *Opsahl v. State*, 677 N.W.2d 414, 423 (Minn. 2004). Moreover, "[a]ny doubts about whether to conduct an evidentiary hearing should be resolved in favor of the defendant seeking relief." *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013). Although the required showing is relatively low, the supreme court has held that an evidentiary hearing *is not* required "when significant additional evidence of a defendant's guilt was presented at trial, besides the recanted testimony." *Ortega*, 856 N.W.2d at 104.

Even in light of J.M's recantation, there is still "significant additional evidence" that Gant was not permitted to enter the apartment. Officer Phillippe, who responded to the 911 call made by J.M.'s neighbor, took photos of the apartment which were entered into evidence at trial. These photos showed that the chain lock from the apartment's front door had been knocked to the floor and that there were holes in the door jamb where the chain lock had been previously screwed in. Screws from the chain lock were also shown on the floor near the front door. More photos showed that the striker plates from J.M.'s

7

bedroom door were broken off and on the floor. And Officer Phillipe testified that all of these photos showed signs of forced entry. Moreover, while J.M. currently recants her testimony that she never provided Gant with consent to enter her apartment, her affidavit says nothing about her other testimony that she locked and barricaded the apartment's doors. The photos, police testimony, and J.M.'s other testimony all indicate that, even if we assume the truth of J.M.'s statement that she "invited [Gant] to come back home and talk," it is clear that any consent was revoked prior to Gant's entry. This conclusion is further supported by the rest of the statements in J.M.'s current affidavit, which read:

> Although I invited him to come back home and talk, *I had second thoughts while I was waiting*, and by the time he returned I wasn't thinking very well and was very emotionally distraught.

(Emphasis added). By the time Gant arrived at the apartment, he had to force his way through a locked and barricaded front door and then through a locked bedroom door. Because significant additional evidence shows that any invitation had clearly been revoked, J.M.'s false testimony would not have affected Gant's burglary conviction. The postconviction court did not err when it refused to grant an evidentiary hearing.

## II.     The postconviction court did not err in denying Gant a new trial.

Gant next argues that he is entitled to a new trial because the district court's jury instructions relating to his stalking charge were erroneous. District courts have broad discretion in the context of jury instructions. *State v. Kelley*, 855 N.W.2d 269, 274 (Minn. 2014). "But a district court abuses that discretion if its jury instructions confuse, mislead, or materially misstate the law. We review the jury instructions as a whole to

8

determine whether the instructions accurately state the law in a manner that can be understood by the jury." *Id*. (citation omitted).

With regard to the "pattern of stalking conduct," the district court instructed the jury that:

> As indicated in the instructions, the state must prove a pattern of stalking conduct by proving two or more criminal acts within a five-year period. The state seeks to meet this element by proving either Count 1, 3, or 4 in addition to at least one of the following prior criminal acts: Domestic Assault by Strangulation, which occurred on February 7, 2007; Violation of Domestic Abuse No Contact Order, which occurred on February 5, 2008; Domestic Assault by Strangulation, which occurred on September 28, 2008; and other domestic assaults which occurred between 2009 and 2012.

Gant alleges two reversible errors with regard to these instructions: (1) domestic assault by strangulation is not on the statutory list of predicate criminal acts that can make up a pattern of stalking conduct and (2) one of the acts of strangulation utilized by the state was not within the five-year charging period. At trial, Gant objected to the second error, but not to the first. Each will be addressed below.

### A. Unobjected-to error

Because Gant did not object to the inclusion of previous acts of domestic assault by strangulation as a part of its pattern-of-stalking instructions, this court reviews the instruction for plain error. *State v. Watkins*, 840 N.W.2d 21, 27-28 (Minn. 2013). Under this analysis, appellant must show (1) error (2) that is plain and (3) affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If all three

9

elements are met, we must then determine whether we "should address the error to ensure fairness and the integrity of the judicial proceedings." *Id*.

### 1. Error

Gant was convicted of felony stalking in violation of Minn. Stat. § 609.749, subd. 5(a) (2010). Under this statute, a person is guilty of felony stalking if the person

> engages in a *pattern of stalking conduct* with respect to a single victim . . . which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which does cause this reaction on the part of the victim[.]

Minn. Stat. § 609.749, subd. 5(a) (emphasis added). A "pattern of stalking conduct" occurs when two or more predicate acts transpire within a five-year period. *Id*., subd. 5(b) (2010). Proof of a pattern of "convictions" is not required; rather, proof of two or more predicate "acts" is sufficient. *State v. Schmitz*, 559 N.W.2d 701, 705 (Minn. App. 1997), *review denied* (Minn. Apr. 15, 1997). The statute lists 16 qualifying predicate acts which may be used to establish a pattern of stalking conduct. *See* Minn. Stat. § 609.749, subd. 5(b)(1)-(16).

As Gant points out, "domestic assault by strangulation" in violation of Minn. Stat. § 609.2247, subd. 2 (2010), is not among the 16 predicate acts explicitly listed in the statute. Relying on the canon "the expression of one thing is the exclusion of another," Gant argues that any offense not on the statutory list cannot be used as a predicate act to establish a pattern of stalking conduct. Because the district court instructed the jury to consider domestic assault by strangulation as a predicate act, Gant argues it committed error necessitating a new trial. We are not persuaded.

10

As the postconviction court recognized, "domestic assault" *is* included in the list of qualifying predicate acts. *See id*., subd. 5(b)(5). The inclusion of "domestic assault" is particularly notable when comparing its elements to the elements of "domestic assault by strangulation." The domestic assault statute reads:

> Whoever does any of the following against a family or household member as defined in section 518B.01, subdivision 2, commits an assault and is guilty of a misdemeanor:
> (1) commits an act with intent to cause fear in another of immediate bodily harm or death; or
> (2) intentionally inflicts or attempts to inflict bodily harm upon another.

Minn. Stat. § 609.2242, subd 1 (2010). The domestic-assault-by-strangulation statute employs the same definition of "family or household members," defines "strangulation" as "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person," and states that "whoever assaults a family or household member by strangulation is guilty of a felony[.]" Minn. Stat. § 609.2247 (2010). Accordingly, the statutory definition of domestic assault by strangulation necessarily includes all the elements of domestic assault, plus the additional element of strangulation. *See State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006). ("An offense is 'necessarily included' in a greater offense if it is impossible to commit the greater offense without committing the lesser offense."). It would be impossible to commit domestic assault by strangulation without committing domestic assault. Therefore, the district court did not err by instructing the jury to use Gant's domestic assaults by strangulation as predicate acts because those acts would necessarily include acts of domestic assault, which are specifically listed.

As Gant points out, under the above approach, domestic assault should not be on this list because it necessarily includes the offense of fifth-degree assault, which is also listed. *Compare* Minn. Stat. § 609.224 (2010), *with* Minn. Stat. § 609.2242. Technically, domestic assault does not need to be included because any predicate acts of domestic assault would be covered by having fifth-degree assault listed. Gant argues that listing them both indicates that the legislature intended only to have the specific offenses on the list qualify as predicate acts. But strictly limiting predicate acts to those on the list would lead to an absurd result. Under Gant's approach, an assailant who strangles a family member would not create a predicate act for establishing a pattern of stalking conduct, while an assailant who commits a misdemeanor domestic assault would. That an assailant would be benefited by inflicting more serious harm is the type of absurd result that our interpretation must aim to avoid. *See* Minn. Stat. § 645.17(1) (2010) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable."); *see also Wegener v. Comm'r of Revenue*, 505 N.W.2d 612, 617 (Minn. 1993) (recognizing our obligation to go beyond the plain language of the statute if a literal interpretation "leads to absurd results or unreasonable results which utterly depart from the purpose of the statute").

Because the district court did not err with respect to this issue, our analysis of the plain-error test ends here. *See Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011) (explaining that if any one of the requirements of the plain-error test is not satisfied, the others need not be addressed).

12

## B. Objected-to error

"[W]hen a defendant timely objects to a jury instruction, we apply the harmless-error analysis to determine whether the error requires reversal." *Watkins*, 840 N.W.2d at 27 n.3. Because Gant does not allege that a constitutional right has been implicated, he will be granted a new trial only if he proves that there is a "reasonable possibility" that the error "significantly affected the verdict." *See id.*

In its instruction on pattern-of-stalking conduct, the district court informed the jury that it could consider Gant's prior act of "domestic assault by strangulation which occurred on February 7, 2007." As Gant pointed out at trial, five years prior to the February 19, 2012 charged offense would be February 19, 2007. The domestic assault by strangulation act occurring on February 7, 2007, falls just outside that five-year window. Thus, the district court erred by including it in the jury instructions.

Gant argues that a new trial is required under *State v. Anderson*, 394 N.W.2d 813, (Minn. App. 1986), *review denied* (Minn. Dec. 12, 1986). In *Anderson*, a juvenile was tried as an adult for intrafamilial sexual abuse, which meant that he could only be charged with violations committed after reaching age 14. *Id.* at 815. Because the state improperly relied on acts committed both before and after the defendant reached 14, we concluded that a new trial was necessary because "it [was] impossible to determine whether the jury in reaching its decision may have considered acts allegedly occurring before [he reached 14]." *Id.* at 816. Gant argues that, like in *Anderson*, it is impossible to determine whether the jury relied on the February 7, 2007 act or the other properly included predicate acts. We disagree.

13

This case is analogous to *State v. Shamp*, 427 N.W.2d 228 (Minn. 1988). Shamp was convicted of first-degree criminal sexual conduct for multiple acts committed between 1978 and 1985. *Id.* at 229. On appeal, it was revealed that, under the statute of limitations, Shamp could only be charged with acts occurring after August 1, 1982. *Id.* at 230. Relying on the reasoning in *Anderson*, this court reversed for a new trial. *State v. Shamp*, 422 N.W.2d 736, 739 (Minn. App. 1988). The supreme court reversed our decision and observed that while the first of the specific acts may have occurred prior to August 1, 1982, it was clear that multiple incidents occurred after August 1, 1982. *Shamp*, 427 N.W.2d at 231. The supreme court concluded that a new trial was not necessary because "there [was] no reasonable likelihood that the jury somehow discredited the victim's testimony relating to abuse occurring after August 1, 1982, but credited her testimony concerning abuse occurring before August 1, 1982." *Id.*

The same reasoning applies here. While improper, the 2007 act was only one of a number of qualifying predicate acts committed by Gant. J.M. testified that Gant choked her in September 2008, and Gant admitted that he "lost his mind" and that he put his hands around her neck and assaulted her. Police photographs of J.M.'s injuries resulting from this incident were entered into evidence, and Gant admitted to inflicting those injures. Additionally, Gant admitted to pleading guilty to violating a DANCO in 2008 and a certified copy of his plea petition was entered at trial. By itself, a violation of a DANCO is a specifically listed qualifying predicate act that can be used to establish a pattern of stalking conduct. *See* Minn. Stat. § 609.749, subd. 5(b)(16). Because there were multiple other qualifying predicate acts that occurred within the five-year period,

14

there was no reasonable likelihood that the jury convicted Gant solely on the 2007 offense.  As was the case in *Shamp*, a new trial is not warranted, and the postconviction court did not err in denying Gant's request.

**Affirmed.**